IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WHITNEY BANK, a Mississippi state chartered bank, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 15-0002-CG-M |
| PULLUM-CECILIO, LLC., <u>et al.</u>, | ) ) ) | |
| Defendants. | | |

## ORDER

This matter is before the Court on the motion for summary judgment filed by Plaintiff, Whitney Bank ("Whitney Bank") (Doc. 13), as well as Defendants' response in opposition thereto (Doc. 16), and Whitney Bank's supplemental response (Doc. 20). For the reasons stated below, the motion for summary judgment is **GRANTED**. Also before the Court is Whitney Bank's motion for reasonable attorneys' fees (Doc. 13), for the reasons stated below, that motion is **GRANTED, in part, and DENIED**, **in part.**

## BACKGROUND

This case arises from an unpaid promissory note and a financial institution's attempts to collect the debt from both the borrower and its guarantors. Plaintiff Whitney Bank brought this action against defendants, Pullum-Cecilio, LLC., ("Pullum-Cecilio"), Bart R. Pullum ("B. Pullum"), Rebecca A. Pullum ("R. Pullum"), Shan Cecilio ("S. Cecilio") and the now deceased, Frank Cecilio ("F. Cecilio"), alleging state-law causes of action for

breach of contract regarding their repayment obligations under a Renewal Promissory Note ("the Note"). Federal jurisdiction was properly predicated on 28 U.S.C. § 1332, as the Complaint sufficiently alleged complete diversity of citizenship between Whitney Bank and each defendant, and that the amount in controversy exceeds the $75,000 jurisdictional threshold.

On April 28, 2015, Pullum-Cecilio filed for voluntary Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Florida, Pensacola Division, as Case No. 15-30477 (Doc. 21), which automatically stayed this case as to Pullum-Cecilio. (Doc. 22). Furthermore, during the planning meeting on March 30, 2015, parties advised the Court of the death of Frank Cecilio. (Doc. 15). Whitney Bank's motion for summary judgment only involves S. Cecilio, R. Pullum and B. Pullum, (the "Defendants"). (Doc. 13).

## THE AGREEMENTS

On November 20, 2013, Defendant Pullum-Cecilio executed and delivered to Hancock Bank, (now known as "Whitney Bank"), a Renewal Promissory Note in the principal amount of $864,679.68 (Buntin aff., Doc. 13-2, Exh. A, ¶ 1). The Renewal Note specified that interest would accrue at eight percent per annum on the outstanding principal balance due. Monthly payments of $9370.00 would commence on December 15, 2013. (Id. at ¶ 3). The Renewal Note required all unpaid principal, interest and expenses

2

outstanding to be paid in full as of December 14, 2014.[1] (Id.) Interest accrued on the Renewal Note at eight percent (8%) *per annum* on the outstanding principal balance due. (Id. at ¶ 4). In case of default, "interest shall accrue and Maker will pay interest at the rate of eighteen (18%) percent *per annum* on the outstanding principal balance due." (Id.).

The Renewal Note was secured by collateral, including mortgages on multiple pieces of real estate in Santa Rosa County, Florida. (Id. at ¶ 2). The Renewal Note stated that the Maker, Pullum-Cecilio, waived "demand, presentment, protects, notice of non-payment, notice of protest and any and all lack of diligence or delay in collection or the filing of suit hereon which may occur." (Id. at ¶ 9.1). The Renewal Notice also contained a costs of collection provision, which stated in the event of default, threatened event of default, or the Renewal Promissory Note "is collected in whole or in part through legal proceedings of any nature," then, "added to the unpaid principal balance hereof all costs of collection, including, but not limited to, reasonable attorneys' fees" (Id. at ¶ 10). The Renewal Note's choice of law provision provided that the governing law, venue and jurisdiction is Alabama. (Id. at ¶ 14).

The record also establishes that Rebecca Pullum and Shan Cecilio signed Guaranties on November 18, 2013 backing Pullum-Cecilio's Renewal Note. (Buntin aff., Doc. 13-2, Exhs. D – E). On November 20, 2013, Bart R.

---

[1] The Renewal Note was a "balloon payment mortgage," meaning the note would not fully amoritize over the loan period, but rather the entire sum would be due at the end of the agreed period.

Pullum also signed a Guaranty Agreement guaranteeing Pullum-Cecilio's Renewal Note. (Buntin aff., Doc. 13-2, Exh. C) Each Guaranty Agreement had an identical provision that stated:

> Guarantor hereby absolutely and unconditionally guarantees to Lender the due, regular and punctual payment of the Obligations, including, without limitation, any sum or sums of money now owed to Lender in connection with the Renewal Promissory Note and Mortgage referred therein…

Buntin aff. Doc. 13-2 Exhs. C at ¶ 1; D at ¶ 1; and E at ¶ 1. Each Guaranty Agreement provided, "Guarantor agrees that Lender shall not be required to pursue or foreclose the Mortgage before making a claim or asserting a cause of action against Guarantor under this Agreement." (See Buntin aff. Doc. 13-2 Exhs. C at ¶4; D at ¶4; and E at ¶4). Additionally, the Guaranties agreed to pay "reasonable attorneys' fees arising from" the agreement. (Id. at ¶19). The Guaranties are likewise governed by Alabama law. (Id. at ¶15).

## THE BREACH

By the terms of the Renewal Note, Pullum-Cecilio was to repay the $864,679.68 in principal plus any accrued interest to Whitney Bank on December 14, 2014. (Buntin aff., Doc. 13-2, Exh. A at 1). However, Pullum-Cecilio failed to repay the principal and interest on that date. (Buntin aff. at 3). The omission constituted default under the Renewal Note. (Id., Exh. A at 2 (listing as an even of default "in the payment of interest or accrued late charges thereon as and when the same become due and payable in accordance with the terms")). The Renewal Note provided that such a default triggered accrual of interest at the 18% per annum default rate (per diem

4

amount of $411.91) on the outstanding principal balance. (Id. at 1-2). Plaintiff further claims attorneys' fees and costs incurred in collecting money owed pursuant to the Renewal Note, in the amount of $5,874.84 billed hours, plus an additional $797.50 of unbilled time. Plaintiffs' attorney further contends "that 15% of the outstanding balance as of December 29, 2014, or $126,202.88, is a fair, reasonable and necessary attorneys' fee to collect this outstanding indebtedness, reduce it to judgment and enforce the judgment." (Christian aff., Doc. 13-3, at 4).

Pullum-Cecilio's default on the Renewal Note implicates the Guarantors and their respective agreements to "absolutely and unconditionally" guaranteed payment to Whitney Bank of all obligations owed by Pullum-Cecilio (specifically, promissory notes, interest, fees, attorneys' fees, and costs of collection). Whitney Bank also made an uncontested showing that none of the individual defendants made payments to Pullum-Cecilio's indebtedness to Whitney Bank under the Renewal Note. (Buntin aff. at 3 – 4).

## I. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law applicable to the case determines what is material. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534

5

U.S. 1081 (2005). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating the movant's arguments, the court must view all evidence and resolve all doubts in the light most favorable to the nonmovant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then [the court] should deny summary judgment." Hinesville Bank v. Pony Express Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citation omitted). The basic issue before the court then is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton, 358 F.3d at 809.

## II. ANALYSIS

### a. Governing law

As an initial matter it is important to note the controlling law in this case. This case is before the Court due to diversity jurisdiction and the Court must apply the laws of the state in which the federal court sits. See Manuel

v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principles of lex loci contractus and lex loci delicti. Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So.3d 200, 213 (Ala. 2009). In Alabama, the laws of the state where the contract was made govern contract claims, unless the contracting parties chose a particular state's laws to govern their agreement. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). In this action, the contracts were made in Alabama and the parties chose the State of Alabama (Buntin aff. Exhs. A at ¶ 14; C at ¶ 15; D at ¶ 15; E at ¶15.). Therefore, the laws of the State of Alabama apply.

Under Alabama law, loan documents are governed under contract law. See Penick v. Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc., 46 So.3d 416, 428 (Ala. 2010) (construing terms of a mortgage, notes and modification agreement). In that regard, "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." Diamond v. Bank of Alabama, 43 So.3d 552, 563 (Ala. 2009) (construing terms of a promissory note, guaranty, line of credit and letter of credit and finding documents underlying loan transaction were not ambiguous) (citations omitted). See Peppertree Apartments, Ltd. v. Peppertree Apartments, 631 So.2d 873, 878 (Ala.1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and

that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous."). In this case the Defendants do not argue that the terms of the Renewal Promissory Note are ambiguous. Furthermore, when Pullum-Cecilio defaulted on the Renewal Note, the individual Guarantors became liable.

In order to prevail on its breach of guaranty agreement claim, Whitney Bank must establish the (1) existence of each of the individual guaranties, (2) default on the underlying Note by Pullum-Cecilio, and (3) nonpayment by the guarantors. See Branch Banking and Trust Co. v. Broaderip, 2011 WL 3511774, 3 (S.D. Ala. Aug. 11, 2011) ("Every suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty.") quoting Delro Industries, Inc. v. Evans, 514 So.2d 976, 979 (Ala. 1987); see also, Vision Bank v. Algernon Land Co., LLC, 2011 WL 1380062, *7–8 (S.D. Ala. Apr. 12, 2011); Sharer v. Bend Millwork Sys., Inc., 600 So.2d 223, 225–26 (Ala. 1992).

The guaranty at issue is a continuing guaranty. Generally, an additional element of notice of Pullum-Cecilio's default to the guarantor(s) must also be proven. However, here the guarantors, B. Pullum, R. Pullum and S. Cecilio, waived "[p]resentment, protest, demand, and notice of protest and demand of any collateral, and of the exercise of possessory remedies or foreclosure on any and all collateral received by Lender." (Buntin aff. Exhs.

C, D, and E at ¶6). In that regard, "[t]he language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it." Wells Fargo Bank v. Richard D. Horne, LLC, 2010 WL 5376341, *3 at n.1 (S.D. Ala. Dec. 27, 2010); see also RBC Bank v. CMI Electronics, Inc., 2010 WL 2719096, *2 (M.D. Ala. Jul. 8, 2010) ("[i]n the case of a continuing guaranty, it is also necessary to prove that the guarantor received notice of the debtor's default, unless that right has been waived by the terms of the guaranty contract."). Therefore, due to the clear waiver by each guarantor, Whitney Bank did not need to provide notice of the default.

Moreover, when a contract is "one of absolute guaranty," as in this case, "the failure of the principal to pay the debt within the time provided in the principal contract fixed the liability of the guarantors, without regard to the question of the principal's solvency or insolvency, and the plaintiff was under no duty to the guarantors to pursue its remedy against the principal as a prerequisite to its right to recover against the guarantors." Ehl v. J.R. Watkins Medical Co., 112 So. 426, 426 (Ala. 1927); In re Southern Cinemas, Inc., 256 B.R. 520, 527 (Bkrtcy. M.D. Fla. 2000) (holding under Alabama law that "[i]n order to be entitled to enforce the obligation of the contract of guaranty, the creditor must show that the guaranteed debt or obligation is due.").

As detailed above, the record reveals that Pullum-Cecilio executed a Renewal Promissory Note with Whitney Bank. The Guarantors, B. Pullum, R. Pullum, and S. Cecilio, absolutely and unconditionally guaranteed the payment of indebtedness owed by Pullum-Cecilio under the Renewal Note. When Pullum-Cecilio defaulted, these Guarantors became liable to Whitney Bank. There is no evidence that the contract is invalid, nor do the Defendants contest the validity of the note.

### b. Defendants argument in opposition to summary judgment

In response to Whitney Bank's motion for summary judgment, Defendants do not contest the validity of the contracts themselves, but rather argue that the motion is premature. Defendants invoke Federal Rule of Civil Procedure 56(d), which provides that "[i]f a nomovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may ... defer considering the motion or deny it." FED. R. CIV. P. 56(d)(1). In an affidavit filed pursuant to Rule 56(d), Defendants' counsel served opposing counsel with a production request and had yet to receive the requested documents as of April 2, 2015, the date of the filing. (See Peterson aff., Doc. 16). Included in the production request was Defendants' request for information specific to the issues raised in Defendants' affirmative defenses. Defendants' counsel avers that "[w]ithout the requested discovery, the Defendants are not able to fully address the merits the Motion for Summary Judgment filed by Plaintiff." (Peterson aff. at

2).

"The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997) (citations omitted). That said, it is not a prerequisite that *all* discovery be completed before summary judgment is entertained. See Fla. Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1316 (11th Cir. 1990) ("The district court is not required to await the completion of discovery before ruling on a motion for summary judgment."). In fact, the Eleventh Circuit has counseled that "we expect that district judges will be open" to Rule 56 motions filed "at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1188 (11th Cir. 2005); see also Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843–44 (11th Cir. 1989) (declining to adopt *per se* rule prohibiting entry of summary judgment before discovery). The rule's text underscores the point by providing that, unless a different time is fixed by court order or local rule, "a party may file a motion for summary judgment ***at any time*** until 30 days after the close of all discovery." Rule 56(b), Fed. R. Civ. P. (emphasis added).

The burden to show entitlement to relief under Rule 56(d) rests with the Defendants. See, e.g., Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1338

(11th Cir.2012) ("Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [Rule 56(d)] by presenting specific facts explaining the inability to make a substantive response.") (citation omitted); Sterk v. Redbox Automated Retail, LLC., 770 F.3d 618, 628 (7th Cir. 2014) ("The Rule places the burden on the non-movant that believes additional discovery is required to state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery.") (citation and internal quotation marks omitted). On this record, the Court finds that Defendants have not met this burden and further discovery would not change the outcome of this case.

Defendants claim that additional discovery might bolster their five affirmative defenses. Those defenses are (i) waiver and estoppel, (ii) failure to mitigate, (iii) real property exceeding the amount owed and alleged Equal Credit Opportunity Act violations as to (iv) Shan Cecilio and (v) Rebecca Pullum. (See Doc. 6 at 4 – 5). However, the Renewal Note and the respective Guaranty Agreements bar all of these defenses.

### 1. Failure to Mitigate

Defendants' answer claims as an affirmative defense that Whitney Bank failed to mitigate its damages by foreclosing on the property at issue and establish a deficiency claim.  Defendants suggest that further discovery may bolster this defense, however, the Court is unconvinced.

Alabama courts recognize a duty to mitigate in the breach of contract context. See, e.g., Neumiller Farms, Inc. v. Cornett, 368 So.2d 272 (Ala. 1979) ("Generally, the damages recoverable by a non-breaching party will be measured as though that party had made a reasonable effort to avoid the foreseeable adverse consequences of the breach.") But the concept of mitigation in the breach-of-contract context has rigid, well-defined boundaries. For example, "the rule does not require an aggrieved party to sacrifice a substantive right or forego an advantageous opportunity for the benefit of the breaching party."Neumiller Farms, 368 So.2d at 276. Nor may a breaching party utilize the mitigation doctrine to shift the risk of harm to the non-breaching party. See, e.g., Gradco, Inc. v. St. Clair Cnty. Bd. of Educ., 477 So.2d 365, 368 (Ala. 1985) ("A party is obligated to mitigate damages only if they are reasonably foreseeable and the effort to avoid them will not entail undue risk."); American Savings Bank, F.A. v. United States, 98 Fed. Cl. 291, 312 (Fed. Cl. 2011) ("The non-breaching party is only required to take reasonable steps to mitigate damages," and need not take actions that "do not limit the harm [but] merely shift it around").

The fundamental problem with the failure to mitigate affirmative defense is it would effectively blot out the clear and unambiguous terms of the contract. Each Guaranty Agreement explicitly stated, "Guarantor agrees that Lender shall not be required to pursue or foreclose the Mortgage before making a claim or asserting a cause of action against Guarantor under this

13

agreement." (Buntin aff. Exhs. C, D, E at ¶4). The Defendants cannot add new and advantageous terms to the agreement after the breach. See, e.g.,  In re Kellett Aircraft Corp., 186 F.2d 197, 198–99 (3rd Cir. 1950)("[t]he rule of mitigation of damages may not be invoked by a contract breaker ... merely for the purpose of showing that the injured person *might* have taken steps which ... would have been more advantageous to the defaulter."). Thus, the Court finds that Whitney Bank did not have a duty to mitigate by foreclosing on the property.

### 2. Waiver, Estoppel and the Value of Property

Defendants also claim as an affirmative defense, "Plaintiffs claims are barred by the doctrines of waiver and estoppel." (Doc. 6 at 4). Relatedly, Defendants also allege that the "value of the real property exceeds the amount of debt owed Plaintiff," and "[p]laintiff is estopped from seeking deficiency judgment against Defendants." (Doc. 6 at 4).  Again, the terms of the Renewal Note and the Guaranty Agreements render these arguments futile. The Guaranty was "absolute and unconditional….Guarantor waives any and all defenses of Borrower as any defense for Guarantor, other than the defense of payment in full." (Buntin aff. Exhs. C, D, E at ¶4).

### 3.  Equal Credit Reporting Act

Finally, as to the alleged violations of the Equal Credit Reporting Act, 15 U.S.C. § 1691 et. seq., the Court is again not persuaded that further

discovery will change the outcome. The Guaranty Agreement contained a

paragraph-long provision in which each Guarantor:

> [C]ompletely and fully releases, remises, acquits and
> discharges forever Lender…of and from any and all claims,
> demands, actions, causes of action, suits, costs, damages,
> expenses and liability of every kind, character or description,
> either direct or consequential, at law or in equity, which it
> may have note, may have had at the time, heretofore, or may
> have at any time hereafter, arising from, resulting from, or in
> any manner growing out of or incidental to the Renewal
> Promissory Note.

(Buntin. Exhs. C, D, E at ¶24). This provision disallows any possible

counterclaims Shan Cecilio and Rebecca Pullum may have against Whitney

Bank. In signing the agreement Guarantors represented and warranted "to

Lender and covenants that Guarantor has full power and unrestricted right

to enter this Agreement, to incur the obligations provided for herein, and to

execute and deliver the same to Lender, and that when executed and

delivered, this Agreement will constituted a valid and legally binding

obligation of Guarantor, enforceable in accordance with its terms." (Buntin

aff. Exhs. C, D, E ¶10). Alabama law provides "[w]hen interpreting a

contract, a court should give the terms of the contract their clear and plain

meaning and should presume that the parties intended to do what the terms

of the agreement clearly state." Brewbaker Motors, Inc. v. Belser, 776 So.2d

110, 112 (Ala. 2000). Additionally, [the Alabama Supreme Court] will

interpret the terms of a contract to give 'effect to all terms used.' Sullivan,

Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725

(Ala.1995). See also Bd. of Water & Sewer Comm'rs of Mobile v. Bill Harbert

Constr. Co., 870 So.2d 699, 710 (Ala. 2003) ("The law is settled that this Court is bound to construe contracts so as to give meaning to all provisions whenever possible."). Giving meaning to all of the provisions in the contract, B. Pullum, S. Cecilio, and R. Pullum, all stated they had full power to enter the agreement, were bound by the terms and completely released Whitney Bank of any claims arising out of the Renewal Promissory Note or the prior notes. No amount of discovery will change the terms of the original agreement.

Thus, the Court finds that Defendants did not meet the burden to show that additional discovery would allow them to adequately respond to the motion for summary judgment. The Court denies Defendants' relief under Rule 56(d) and finds that there is an adequate record on which to decide the motion for summary judgment.

Even casting the facts in a light most favorable to the nonmovants, the Renewal Note and the Guaranty Agreements are clear. The Court cannot and will not rewrite the terms of the agreement that the nonmovants breached. There is no dispute over the contract itself and the Court must construe the terms as written. Therefore, as the record supports, Whitney Bank established (1) existence of each of the individual guaranties as to R. Pullum, B. Pullum and S. Cecilio; that (2) Pullum-Cecilio defaulted on the underlying note and (3) nonpayment by the Guarantors. See Branch Banking and Trust Co. v. Broaderip, 2011 WL 3511774, 3 (S.D. Ala. Aug. 11, 2011) ("Every suit

16

on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty.")

Accordingly, because there is no genuine issue as to any material fact in this case, Whitney Bank is entitled to a judgment as a matter of law in accordance with Fed. R. Civ. P. 56(c).

### c. Damages Calculation

Whitney Bank states that as of December 29, 2014, the deficiency balance on the loan was $823,803.42 with accrued interest in the amount of $14,399.15 (with a post-default rate $411.91 *per diem*), for a total principal and interest of $838,202.57, plus costs of $2,900 for the appraisal fee, and $250.00 late fee for a total amount due of $841,352.57 as of December 29, 2015. (Doc. 1; Doc. 16).

The Court finds that damages are due to Whitney Bank in the amount of $823,803.42, the deficiency balance due at the time of default; plus interest accrued at the time of default, $14,399.15; plus the $2900.00 appraisal fee and $250.00 late fee; plus interest accrued from the time of default December 29, 2014 to June 15, 2015, in the amount of $69,612.79 (169 days x $411.91 per day), for a total of **$910,965.36.**

The Court also finds that post-judgment interest in this case should be awarded at the federal rate prescribed by 28 U.S.C. § 1961 (a), rather than the contractual default rate of 18%. Under federal law, "[i]nterest shall be

allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). The statute further provides that interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of judgment." Id. Where, as here, the applicable contracts do not contain express provision for post-judgment interest to accrue at a rate different than set forth in § 1961 (a), the statutory rate governs, as a matter of law. See, e.g., Vision Bank v. Garrett Investments, LLC., 2012 WL 628915, *4 (S.D. Ala. Feb. 27, 2012)("Because the Note does not contain an express provision for a post-judgment interest rate, [the Bank] is entitled to post-judgment interest only to the extent provided by § 1961 (a).")

According to the most current weekly average of the Federal Reserve Statistical Release H.15, dated June 15, 2015 and found at www.federalreserve.gov/releases/h15/current, the average 1-year constant maturity Treasury yield for the week ending June 12, 2015 was **.28%**. As such, post-judgment interest shall accrue at the statutory rate of **.28%** from this date forward.

### III. ATTORNEYS FEES & EXPENSES

In addition to the unpaid principal, interest and default interest, Whitney Bank seeks an award of attorney's fees and costs. "Alabama follows

the American rule, whereby attorney fees may be recovered if they are

provided for by statute or by contract …" Jones v. Regions Bank, 25 So.3d

427, 441 (Ala. 2009) (citations omitted); see also Battle v. City of

Birmingham, 656 So.2d 344, 347 (Ala. 1995) (same). The law is clear that

"provisions regarding reasonable attorney's fees are terms of the contracts

susceptible to breach." Army Aviation Center Fed. Credit Union v. Poston,

460 So.2d 139, 141 (Ala. 1984). Here, the Renewal Note provides:

> In the event Lender engages an attorney to render
> services or advice incident to an Event of Default or
> threatened Event of Default, or in the event this Renewal
> Promissory Note is collected in whole or in part through legal
> proceedings of any nature, then and in such case there shall
> be added to the unpaid principal balance hereof all costs of
> collection, including, but not limited to, reasonable attorneys'
> fees.

(Buntin Aff., Exh. 13-2, at 10). The Guaranty Agreement expressly places the

individual Defendants on the hook for attorneys' fees owed by Pullum-Cecilio,

L.L.C. under the Renewal Note. See Doc. 13, Exhs. C, D, E at 7) As such,

reasonable attorneys fees is an acceptable component of damages available to

Whitney Bank in this case.

### 1. The $126,202.88 fee request is improper

On summary judgment, Whitney Bank's counsel claims that he is "of

the opinion that 15% of the outstanding balance of December 14, 2014, or

$126,202.88, is a fair, reasonable, and necessary attorneys' fee to collect this

outstanding indebtedness, reduce it to judgment and enforce the judgment."

(Doc. 13-3, Exh. 2 at 3). Yet, there is no evidence that counsel's retainer

agreement provides for a computation of fees based on a percentage of the principal amount of the loan. Whitney Bank's counsel states that the fee arrangement is a "hybrid arrangement" whereby "Whitney advances hourly fees on submitted Invoices, which are then offset against collection of attorneys' fees awarded by the Court." (Id.)

Plaintiff's contention that a 15% fee would be reasonable under Alabama law, and its submission of plaintiff's counsel statement in support of the same, is unpersuasive. This District has repeatedly rejected hypothetical percentage-based fee awards. See, e.g., PNCEF, LLC V. Hendricks BLDG. Supply LLC, 740 F. Supp.2d 1287 (S.D. Ala. 2010); Whitney Bank v. Point Clear Development, LLC, 2012 WL 2277597 (S.D. Ala. June 18, 2012). Furthermore, the Renewal Note provides that Pullum-Cecilio pay "added to the unpaid principal balance hereof all costs of collection, including, but not limited to, reasonable attorneys' fees." (Buntin Aff., Exh. 13-2, at 10). The plain reading of the contract language of "reasonable attorneys' fees and costs" means the actual fees and not a hypothetical, percentage based award of $126,202.88. Whitney Bank does not owe its lawyers $126,202.88 for the work performed on this case.

Attorneys' fees must be reasonable. See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano, 80 So.3d 226, 241 (Ala. Civ. App. 2010)("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."). Therefore, as a matter of law and contract,

Whitney Bank may only recover its actual, reasonable attorneys fees. The Court will neither rewrite the Renewal Note to insert language obligating the borrower to pay 15% of the outstanding principal as an attorneys' fee, nor speculate that Whitney Bank's lawyers agree to represent the Bank on a contingency basis for a fee of 15% of the principal amount collected. Therefore, the request for 15% of the outstanding principal as an attorneys' fee is **denied.**

### 2.  The Actual Award of Attorneys fees is proper

The Court now turns to the issue of whether actual attorneys' fees are warranted in this case. "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." Jones v. Regions Bank, 25 So.3d 427, 441 (Ala. 2009) (citations omitted). See also Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala. 1995) (same). The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." Army Aviation Center Fed. Credit Union v. Poston, 460 So.2d 139, 141 (Ala.1984). See also Ierna v. Arthur Murray Int'l., Inc., 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case [ ]"). Under Alabama law, such attorney's fees are recoverable; however, recovery is subject to Alabama's imposition of a reasonableness constraint on all fee-shifting contracts, as a matter of public policy. See, e.g., Willow Lake Residential Ass'n., Inc. v.

Juliano, 80 So.3d 226, 241 (Ala. Civ. App. 2010) ("Alabama law reads into

every agreement allowing for the recovery of attorney's fees a reasonableness

limitation[ ]"); PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F.Supp.2d

1287, 1294 (S.D. Ala. 2010) (rejecting claim for attorney's fees in amount of

15% of fund to be collected, where plaintiff made no showing of its actual

attorney's fee incurred in enforcing contract). Thus, Whitney Bank is entitled

to recover only its reasonable attorneys' fees and costs incurred in collecting

on Pullum-Cecilio's debt.

The calculation of reasonable attorney's fees is clearly within the

sound discretion of the court. Dowdell v. City of Apopka, Fla., 698 F.2d 1181,

1187 (11th Cir. 1983); Kiker v. Probate Court of Mobile Cnty., 67 So.3d 865,

867 (Ala. 2010). In assessing the reasonableness of attorney's fee requests,

courts generally apply the "lodestar" method to obtain an objective estimate

of the value of an attorney's services. Norman v. Housing Auth. of City of

Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); Dillard v. City of

Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (explaining that the

lodestar "is the number of hours (tempered by billing judgment) spent in the

legal work on the case, multiplied by a reasonable market rate in the local

area"). The value of an attorney's services is calculated by multiplying the

hours that the attorney reasonably worked by a reasonable rate of pay,

defined as "the prevailing market rate in the legal community for similar

services by lawyers of reasonably comparable skills, experience, and

reputation." Blum v. Stenson, 465 U.S. 886, 895–96 n. 11 (1984). The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir.1999). The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994).

When seeking attorney's fees, the prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary;" or request fees for unsuccessful claims. Hensley, 461 U.S. at 434–35. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. See, e.g., Norman, 836 F.2d at 1299. Notably, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." Id. at 1303 (citations omitted).

Further, the lodestar figure established by the Court may be adjusted by consideration of various factors including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). See also e.g. Pharmacia Corp. v. McGowan, 915 So.2d 549, 552–554 (Ala. 2004); Lolley v. Citizens Bank, 494 So.2d 19 (Ala. 1986). These criteria are for purposes of evaluating whether an attorney fee is reasonable but they are not an exhaustive list of specific criteria that must all be met. Beal Bank, SSB v. Schilleci, 896 So.2d 395, 403 (Ala. 2004).

### a. Reasonable Rate

A plaintiff has the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. Barnes, 168 F.3d at 427 (citing Norman, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal

community is Mobile, Alabama. See Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citations omitted)). The Court, which is familiar with the prevailing rates in the local market (Mobile, Alabama), may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested fees. Loranger, 10 F.3d at 781.

The rates requested include rates for time counsel ($275/ hour for 35 years of experience and $235/hour for unknown years of experience) expended, for a total of 19.54 hours on this case.  Specifically, Plaintiff seeks $275.00 per hour for 16.64 hours of work by Alan Christian (35 years of experience) and $235.00 per hour for partner Rick La Trace for 2.9 hours of work (years of experience unknown). The Court, utilizing its own expertise in this market as well as a review of prior fee awards, has determined hourly rates and time that it deems reasonable and appropriate for the work performed in this case. See, e.g., PNC Bank, N.A. v. Pounds Wrecking, Inc., 2014 WL 4655435, *5 (S.D. Ala. Sept. 17, 2014); Vision Bank v. FP Mgmt., LLC, 2012 WL 222951, *3 (S.D. Ala. Jan. 25, 2012); Vision Bank v. Anderson, 2011 WL 2142786, *3 (S.D. Ala. May 31, 2011); Mitchell Co., Inc. v. Campus, 2009 WL 2567889, *1 and *17–18 (S.D. Ala. Aug. 18, 2009); Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, *4 (S.D. Ala. Feb. 3, 2011).

Regarding the requested $275/hour rate and $235/hour rate for

partners Alan Christian and Rick La Trace, the Court finds that this rate does not exceed rates which have been found reasonable in this Court. See, e.g., Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 2011 WL 1883009, at *5 (S.D. Ala. May 17, 2011) aff'd, 476 F. App'x 198 (11th Cir. 2012) (applying an hourly rate of $275 for an attorney with over 25 years of litigation experience). As such, the Court finds the requested rates for Christian and La Trace are due to be granted, as they are reasonable partner rates previously awarded by this Court. The Court awards attorneys Christian the rate of **$275/hour** and La Trace the rate of **$235/hour.**

### b. Reasonable Hours expended

In determining whether the number of hours expended are reasonable, the Court should not include any hours that are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. The Court will not permit a party to recover fees for hours that are excessive, redundant, or unnecessary, i.e., hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). While there is no per se rule of proportionality, City of Riverside v. Rivera, 477 U.S. 561, 574 (1986), the

Supreme Court has made clear that such could still be considered a factor in determining the reasonableness of a fee request. "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988.... It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." <u>Id</u>. (citation omitted). In sum, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." <u>Barnes</u>, 168 F.3d at 428.

In conjunction with the motion, Whitney Bank's counsel submitted billing records through February 2015. (Christian aff. Exh. A). Counsel for Whitney Bank's billing records (Christian aff. Exh. A) indicate that the individuals worked on this case billed a total of 19.54 hours. (<u>Id</u>.) Specifically, the billing records indicate that Mr. La Trace worked on the file 2.9 hours and Mr. Christian, 16.64 hours. Upon closer inspection of the invoices, the Court finds that the work was reasonable. Therefore, the Court finds that 19.54 hours billed is reasonable in this case. The lodestar amount is **$5,257.50** and the Court agrees with this calculation as an attorneys' fee in this case. The requested costs and expenses of **$617.34** are adequately documented and are also approved as reasonable. Adding attorney's fees and costs to the loan balance previously found to be due and owing, the proper amount of the judgment to be entered against defendants is **$915,192.56.**

Counsel for Whitney Bank also claims that an additional 20 hours is needed for the "hearing and subsequent entry of judgment" and "approximately 100 hours with respect to execution on the judgment, post-judgment discovery of assets, collection and other related activities." (Christian aff. Exh. A at 2). However, Counsel cites no case law supporting the award of future attorneys' fees and the Court does not consider that request at this time.

### IV. TOTAL DAMAGES AWARD

In sum, Plaintiff established based on uncontroverted facts that it is entitled to entry of judgment in its favor as a matter of law on its claims for breach of the Renewal Note by defendant Pullum-Cecilio and breach of the individual guaranties signed by Rebecca Pullum, Shan Cecilio, and Bart Pullum. Damages have been proven in the following categories and amounts:

(i)     unpaid principal in the sum of **$823,803.42**, as documented by paragraph 7 of the Buntin affidavit

(ii)    prejudgment interest in the sum of **$14,399.15** for the period of December 15, 2013 to December 29, 2014, on the total outstanding principal of $823,803.42, per the Buntin affidavit on paragraph 7.

(iii)   Prejudgment interest in the sum of **$69,612.79** for the period of December 29, 2014 through the date of entry of this Order and Judgment, calculated at the contractual default interest rate of 18% ($411.91 per diem) on the total outstanding principal of $823,803.42 ($411.91 x 169 days)

(iv)    Reasonable attorneys fees and costs of **$5,874.84**.

(v)     The appraisal fee of **$2900.00** and the late fee of **$250.00.**

Bringing the total amount of damages due to **$916,840.20.**

## CONCLUSION

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 13) is **granted,** and Plaintiff's motion for attorneys' fees (Doc. 13) is **granted, in part**, and **denied, in part**.

2. Judgment will be entered in Plaintiff's favor and against all remaining defendants, jointly and severally, in the total amount of **$916,840.20.**

3. Post-judgment interest will accrue on this sum at the statutory rate of **0.28%;**

4. A separate judgment will enter; and

5. This Order and the accompanying Judgment having resolved all issues against all parties herein, the Clerk's Office is **directed** to close this file for statistical and administrative purposes.

**DONE** and **ORDERED** this 15th day of June, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE